**In re The CHARTER COMPANY, et al., Debtors.**

**DON E. PRATT OIL OPERATIONS, Plaintiff,**

v.

**CHARTER INTERNATIONAL OIL COMPANY and Charter Crude Oil Company, Defendants.**

**Bankruptcy Nos. 84–289–BK–J–GP to 84–332–BK–J–GP.**
**Adv. No. 84–147.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Aug. 16, 1985.

Douglas Bacon, Plaintiff, Houston, Tex., Edwin W. Held, Jr., Jacksonville, Fla., for plaintiff.

James H. Post, Jacksonville, Fla., for defendants.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

The amended complaint in this adversary proceding sets forth two factually related but theoretically distinct claims for relief, i.e. reclamation and constructive trust, both arising from a sale of crude oil by Pratt to the defendant Charter Crude Oil Company (CCOC). A trial was held on April 18, 1985, and the parties have submitted post-trial briefs. The facts as stipulated lead the Court to conclude that Charter International Oil Company (CIOC) is merely a nominal party, and references to "the defendant" throughout the text of the opinion will be to CCOC. The essential facts are subject to a stipulation entered into by the parties, and we will draw on that stipulation, as well as evidence adduced at trial, for our summary of the material facts.

Prior to April 20, 1984, the defendant had, on a regular basis, purchased crude oil from leases operated by the plaintiff. Throughout this course of dealing, the defendant only was responsible for payment for oil it purchased. Between April 3 and April 14, 1984, crude oil with a value of $32,410.41 was produced by Pratt and delivered for the account of the defendant to Mobil Oil Corporation. Between April 15 and April 18, 1984, crude oil with a value of $73,594.98 was delivered in the same manner.

On April 24, 1984, Pratt sent the defendant notice of reclamation as to all of the oil delivered on or after April 3, 1984.

The defendant and Mobil Oil Corporation had entered into the exchange agreement whereby Mobil was to purchase oil from the defendant in November 1983. The plaintiff was not a party to this agreement.

On or about April 3, 1984, Larry Golden, president of the defendant, sent the plaintiff a letter, which appears to be a form letter sent to all operators and producers with which the defendant had a business relationship. The letter appears to be intended to amplify on an announcement that had been made publicly by the defendant on April 2, 1984, to no longer "run crude oil on a sustained basis ... at the Houston division." The second paragraph of the letter reads in pertinent part as follows:

> As to the impact this has on the operations, organization, and financial condition of the Crude Oil Gathering Company, we anticipate that there will be no changes. This segment of our business continues to be one in which we take great pride and anticipate continuing for many years to come.

Delivery of the crude oil was made from trucks operated by Pratt via either trucks leased by Mobil or via the facilities of Mobil Pipe Line Company and was not in the custody or possession of CCOC at any time.

On April 16, 1984, the Charter Company and various of its subsidiaries including the defendant filed in this Court for protection under Chapter 11 of the Bankruptcy Code. On May 8 and 18, 1984, the defendant billed Mobil in the amount of $109,540.00 for the subject crude oil. No payment pursuant to the contract has been made; rather, pursuant to the Court's order of February 21, 1985, granting relief from the automatic stay and allowing offset of mutual debts in the bankruptcy cases to which this adversary proceding is related, Mobil has placed the funds in a segregated interest bearing account and has agreed to distribute it as provided by court order or agreement of the parties. It is undisputed that, to the extent that state law governs the outcome of this proceeding, Kansas law applies.

Section 546 of the Bankruptcy Code defines the rights of reclaiming creditors where the defaulting buyer has filed for

bankruptcy protection. It provides in pertinent part that

 ... the rights and powers of a trustee under sections 544(a), 545, and 549 of this title are subject to any statutory or common-law right of a seller that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the buyer has received such goods while insolvent, but— (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor....

Uniform Commercial Code § 2–702(2) as adopted in Kansas provides,

 Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller within three months before delivery the ten-day limitation does not apply. Except as provided in this subsection, the seller may not base a right to reclaim on the buyer's fraudulent or innocent misrepresentation of solvency or intent to pay.

Subsection (3) makes the seller's right to reclaim subject to

 ... the rights of a buyer in the ordinary course of business or other good faith purchaser or lien creditor under this chapter.

By agreement of the parties, the issue of the alleged insolvency of the defendant has been reserved for a separate trial at a later time.

■ We first must confront the issues created by the debtor's non-possession of the goods at the time of the reclamation demand or indeed at any time. The defendants treat as dispositive their non-possession at the time of reclamation, citing case law to the effect that where the goods sought to be reclaimed are not in the hands of the buyer at the time reclamation is sought, there is nothing to reclaim, and

thus that remedy is foreclosed. *See In re Landy Beef Co., Inc.,* 30 B.R. 19 (Bkrtcy.D. Mass.1983), *In re Flagstaff Food Service Corporation,* 14 B.R. 462 (Bkrtcy.S.D.N.Y. 1981). Cases which treat possession by the buyer as an absolute prerequisite to the right of reclamation have generally not arisen in the factual context of the defaulting buyer, by agreement, *never* having had possession of the goods; they rather appear to arise from the situation in which the buyer *had* possession but relinquished it to a third party before a timely reclamation demand. This Court does not specifically disavow but is unwilling to adopt the sweeping proposition that non-possession by the defaulting buyer at the time of reclamation demand is *invariably* a bar to reclamation. The case law makes abundantly clear, however, that if the goods sought to be reclaimed are not in the hands of the buyer and *are* in the hands of a good faith purchaser, no reclamation remedy can lie.

■ Had there been no bankruptcy, the plaintiff would have been able to pursue any rights created by state law, i.e. principally, if not exclusively, the provisions of U.C.C. 2–702. In the context of bankruptcy, the reclaiming seller would have no rights against a debtor-in-possession exercising the rights of a trustee, but for the provision of § 546(c). Section 546(c), however, places a crucial limitation on a reclaiming seller's pursuit of state law reclamation rights. According to its plain language, no reclamation is to be had unless the seller has made a reclamation demand before ten days after receipt of the goods. The state law with which § 546(c) was drafted to harmonize sets forth *two* sets of circumstances under which a seller may reclaim from an insolvent buyer—the seller may make timely demand or the demand may be excused where a written misrepresentation as to the debtor's solvency has been made by the debtor. The plaintiff urges that the letter from Mr. Golden of February 21, 1984, constitutes such a written misrepresentation and that the § 546 permits use of the written misrepresentation as-to-solvency route to reclamation.

The case law and this Court's unambivalent reading of § 546(c) do not support the plaintiff's position. *In re Gibson Distributing Co.*, 40 B.R. 767 (Bkrtcy.W.D.Tex. 1984), *In re L.T.S., Inc.*, 32 B.R. 907 (Bkrtcy.D.Idaho 1983), and *In re Ateco Equipment*, 18 B.R. 917 (Bkrtcy.W.D.Pa. 1982) have all held that the § 546 requirement for written demand for reclamation within ten days is absolute and cannot be waived on the ground of the buyer's written misrepresentation as to solvency. Our conclusion that, as a matter of law, any written misrepresentation as to solvency is immaterial determines that we need not consider whether Mr. Golden's letter constituted such a misrepresentation. Thus failure to make a timely reclamation demand in itself cuts off the plaintiff's rights in the oil delivered more than 10 days before demand was made.

■ With respect to that oil for whose reclamation a timely demand *was* made, U.C.C. § 2–702 provides that the reclaiming seller's rights are cut off by the rights of a good faith purchaser. We must determine then, with respect to that portion of the oil for which the plaintiff made a timely reclamation demand, whether Mobil was a good faith purchaser. The plaintiff contests good faith purchaser status on Mobil's part in that, 1) it alleges knowledge on Mobil's part of the defendant's insolvency prior to the plaintiff's reclamation demand, and, 2) because Mobil has, rather than actually paying for the oil, placed the agreed-upon price in a segregated fund subject to this Court's order. The facts as stipulated do not suggest that Mobil intended to be other than a buyer in the ordinary course of business. We can find that Mobil is not a good faith purchaser if and only if some additional fact stipulated or shown has the legal effect of affirmatively disqualifying Mobil for good faith purchaser status.

The vast majority of published cases which address the rights of the reclaiming seller vis-a-vis those of a third party concern themselves with a lien creditor of the debtor and are not applicable in this instance. The case most factually analogous to that before us appears to be *In re Coast Trading Co., Inc.*, 31 B.R. 667 (Bkrtcy.D. Ore.1982). There, three growers sold grain to Coast which in turn sold it to Ralston Purina. Ralston "did not pay for the grain as it was in doubt as to which party was entitled to payment," *Id.* at 668. Ralston did later pay the agreed upon price into the registry of the bankruptcy court pursuant to an interpleader action which it filed, i.e. it followed a course of behavior similar to that of Mobil in the instant case. The *Coast* court holds that, "[w]hether the ultimate purchaser has yet paid for the goods ... is clearly immaterial," *Id.* A finding of good faith purchaser status on Ralston's part is clearly implicit in the slightly earlier language, "[i]f the buyer, before reclamation, has already sold the goods to *a good faith purchaser for value*, there is nothing to reclaim as the seller cannot demand a return of the goods from the ultimate purchaser." (*Id.*, emphasis added). The *Coast* court clearly, in predicating its ultimate holding on good faith purchaser status, did not believe that mere non-payment of the purchase price by the ultimate purchaser does negate good faith status where, as the facts in *Coast* and the case before us indicate, it cannot be said that the ultimate purchaser has received, or attempted to receive, a windfall.

We see no merit in the position that Mobil is not in good faith because of some knowledge it may have had of financial instability of the defendant's part—the facts indicate no reason to believe that Mobil sought any unfair advantage or expected to be anything other than a buyer for value in the ordinary course of business. Thus we find Mobil Oil to be a good faith purchaser. Its good faith purchaser status cuts off reclamation rights which the plaintiff would otherwise have to oil delivered within ten days before the reclamation demand.

Our holding in favor of the defendant on the statutory reclamation count of the amended complaint renders moot for this particular adversary proceeding the issue

of the defendant's solvency at the time of receipt of the goods.

 The second count of the plaintiff's amended complaint urges that this is an appropriate instance for imposition of a constructive trust. It is apparent to this Court, however, that it was the intent of the drafters of the Uniform Commercial Code to create U.C.C.—based reclamation as the exclusive remedy to sellers to insolvent defaulting buyers. As we have discussed *supra* it was equally clearly the intent of Congress to further limit the rights of such parties in a bankruptcy context by the restrictions of 11 U.S.C. § 546. We cannot reconcile with such strictly limited statutory remedies, the concept that recourse may be had to a vaguely defined equitable remedy.

If we had found the application of an equitable remedy not to be precluded by legal and policy considerations, we could still find no justification for the imposition of a constructive trust. The plaintiff did not prove any conduct on the part of the defendant more inequitable than is typically encountered in bankruptcy cases. There was no proof or indeed any allegation of fraud or other conduct possibly supporting recourse to an equitable remedy.

For the reasons set forth above, a judgment in favor of the defendant on both counts will be entered with this opinion.

FINAL JUDGMENT FOR DEFENDANTS AND ORDER DIRECTING TURNOVER OF PROPERTY OF THE ESTATE

ORDERED as follows:

1. Judgment is hereby entered in favor of the defendants on both counts of the amended complaint;

2. Mobil Oil Corporation holds funds which, by the terms of this judgment, become property of the bankruptcy estate and it appearing that those funds have been held in an interest-bearing account and that Mobil Oil Corporation asserts no interest in the funds other than that of a stakeholder, Mobil shall forthwith turnover to the debtor-in-possession all principal and interest so held.